**DISTRICT CABLEVISION LIMITED PARTNERSHIP, Appellant/Cross Appellee,**

v.

**Robert BASSIN and Sherl Weems, Appellees/Cross Appellants.**

No. 98–CV–1837, 98–CV–1838.

District of Columbia Court of Appeals.

Argued Dec. 7, 2000.

Decided July 17, 2003.

Brian G. Eberle, with whom Robert E. Youle, Denver, CO, David P. King, DuBois, PA, and Kamil Ismail, Baltimore, MD, were on the briefs, for appellant/cross appellee.

Philip S. Friedman, Washington, DC, for appellees/cross appellants.

Before WAGNER, Chief Judge, and TERRY and GLICKMAN, Associate Judges.

GLICKMAN, Associate J.

The District of Columbia Consumer Protection Procedures Act affords a panoply of strong remedies, including treble damages, punitive damages and attorneys' fees, to consumers who are victimized by unlawful trade practices. In this case two consumers sued District Cablevision Limited Partnership (DCLP) under the Act on behalf of a class of cable television service subscribers who, they alleged, paid illegally excessive late payment fees levied by DCLP. The trial court ruled that the causes of action were governed by a three-year statute of limitations rather than a four-year statute as the plaintiffs proposed. After a jury trial, the plaintiffs obtained a judgment against DCLP for $3,414,411.00 in compensatory damages be-

fore trebling. In a second phase of the trial, the jury awarded an additional $3,274,080.00 in punitive damages. The trial court upheld the plaintiffs' cause of action under the Consumer Protection Procedures Act and the jury's compensatory damage award, but ruled that the evidence was insufficient to support punitive or treble damages. Accordingly, the court set aside the punitive damages award. The court also ruled that the plaintiffs were not entitled to prejudgment interest on their award. Finally, the court awarded the plaintiffs $425,916.25 in attorneys' fees. Both the plaintiffs and DCLP have appealed.

Except in two significant respects, we affirm the trial court's rulings. In agreement with the trial court, we hold that the plaintiffs were entitled to invoke the Consumer Protection Procedures Act to remedy DCLP's violation, in charging a late fee, of common law requirements for a valid liquidated damages clause. We also hold that DCLP was entitled, despite the invalidation of its liquidated damages provision, to prove and recoup the actual damages it sustained as a result of late payments by its subscribers. We agree as well with the trial court's ruling that the plaintiffs' action was governed by a three-year statute of limitations. Hence we uphold the jury's determination of compensatory damages. We hold, however, that the plaintiff class is entitled to prejudgment interest on those damages. Further, while we agree with the trial court that the evidence was insufficient to justify punitive damages, we hold that the plaintiff class is entitled to treble damages.

## I.

During the years relevant to this appeal, DCLP provided cable television service to over 100,000 subscribers in the District of Columbia under the franchise awarded by the Council pursuant to the Cable Television Communications Act of 1981. *See* D.C.Code § 34–1213.01 (2001). Subscribers entered into standardized contracts with DCLP under which they agreed to pay DCLP a monthly fee for the level of cable service they selected. Subscribers also agreed to pay a late charge or administrative fee if they were late with their payments, in an amount to be set from time to time by DCLP. DCLP's ostensible purpose in imposing this late fee was not merely to recover the time value of the delayed payments, *i.e.*, DCLP's carrying costs, but more importantly to defray the expenses that DCLP incurred in its efforts to collect delinquent accounts.

In 1990, DCLP unilaterally increased the late fee it charged its subscribers from $2.00 to $5.00. The new fee was half the charge for basic cable service. DCLP did not base the increase to $5.00 on any analysis or estimate of the costs it actually incurred or anticipated incurring as a result of late payment. In hearings before the District's Office of Cable Television,[1] DCLP's general manager candidly acknowledged that the $5.00 late fee was not cost-based and explained that it was designed simply to "motivate" subscribers to pay in a timely fashion. "The whole point," according to DCLP, was "that we would like them to pay as soon as possible.... If this is a way to facilitate that payment, then that is exactly what we would like them to do." The Office of Cable Television expressed concerns that the increased late fee was not achieving this goal and was larger than necessary to cover the administrative cost burden at-

---

**1.** The Office of Cable Television and Communications is the administrative agency created in the Cable Television Communications Act of 1981 to regulate cable franchisees in the public interest. *See* D.C.Code § 34–1206 (2001).

tributable to late payments. The Office did not insist that the fee be reduced, however. The Office also voiced concerns that DCLP's bills and billing procedures in charging the late fee were confusing to its subscribers. In response to the Office's concerns, DCLP changed the format of its bills, but it kept the late fee at the $5.00 level. At that level, the late charge was comparable to what some cable service providers charged in other localities, though it was higher than what most others charged. DCLP's late fee also was significantly higher than the late fees typically charged by public utilities for gas, electric and similar services.

DCLP subsequently reported to the Office of Cable Television that it was collecting revenues of $1.2 million annually from late fee payments at the new $5.00 rate. Some twenty-five percent of DCLP's subscribers incurred the $5.00 charge each month.

In November of 1994, Robert Bassin and Sherl Weems filed a class action lawsuit in Superior Court on behalf of all subscribers who had paid DCLP's $5.00 late fee in the preceding four years. Mirroring the concerns previously raised by the Office of Cable Television, the plaintiffs challenged DCLP's late fee practices as predatory in two main respects. First, they claimed that DCLP violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C.Code §§ 28–3901–3911 (2001), by intentionally employing confusing and deceptive bills and billing procedures to mislead and manipulate subscribers into paying late fees

that they did not owe or could have avoided by paying their bills more promptly. Second, the plaintiffs claimed that DCLP violated the CPPA, as well as the common law and the liquidated damages provision in the Sales Article of the Uniform Commercial Code, D.C.Code § 28:2–718 (2001), by imposing an exorbitant penalty for late payment. The plaintiffs charged that the $5.00 fee was an illegal penalty and not a valid liquidated damages provision because it bore no reasonable relationship to the anticipated or actual losses that DCLP sustained on account of late-paying subscribers. Moreover, the plaintiffs contended, the late fee was misleading because DCLP did not disclose that its "actual purpose" in levying the fee was to enhance its revenues rather than to recover damages legitimately attributable to late payment. In addition to compensatory damages (disgorgement of accumulated late fees), the plaintiffs sought an award under the CPPA of treble or punitive damages and attorneys' fees and costs.

At trial, both sides presented extensive testimony and other evidence regarding DCLP's billing practices and the costs that DCLP sustained when its subscribers did not pay their bills on time. We need not recount that evidence in detail for the reader to understand the issues raised in this appeal. It suffices for present purposes to note that the validity of the $5.00 late fee primarily turned on the amount and the reasonableness of the direct and indirect costs that DCLP incurred to collect payments owed by delinquent subscribers.[2] Although DCLP had not based

2. When its subscribers failed to pay their bills on time, DCLP employed an escalating series of responses to secure payment. The collection process included an "automatic response unit" that telephoned delinquent subscribers with recorded messages, followup telephone calls from employees in the collections department, the "soft" disconnection of most

(but not all) cable services combined with a message appearing on subscribers' televisions directing them to call DCLP, further reminder telephone calls from DCLP employees, personal visits by DCLP employees to the homes of delinquent subscribers to collect unpaid bills in person, and "hard" disconnections of all cable service pending receipt of payment.

the $5.00 charge originally on any analysis or estimate of its anticipated costs, DCLP contended that the charge was justified nonetheless by the collection costs it actually did incur. DCLP's accounting expert calculated that these collection costs ranged from $11.00 to $12.58 per late payer, or more than twice the $5.00 fee that DCLP had imposed. The plaintiffs challenged DCLP's post-factum cost analysis and countered with evidence that DCLP had incurred no collection costs at all in the majority of cases because most delinquent subscribers paid their bills promptly after being assessed the late fee, before any collection efforts commenced in their cases. The sole cost that DCLP had incurred in those cases, the plaintiffs contended, was the comparatively minimal cost of funds, which supported a much smaller average late fee than DCLP had charged.[3]

In arguing that the liquidated damages provision in their cable service contracts violated the Uniform Commercial Code (U.C.C.) as well as common law, the plaintiffs sought to invoke the four-year statute of limitations provided in the Sales Article of the U.C.C. for breach of contract claims. *See* D.C.Code § 28:2–725(1) (2001). Before sending the case to the jury, however, the trial court ruled that while the U.C.C. governed the transactions generally (which DCLP disputed), the four-year statute of limitations did not apply to the plaintiffs' causes of action. Rather, the court ruled, the case was subject to the three-year limitations period provided in D.C.Code § 12–301(8) (2001) for actions "for which a limitation is not otherwise specially prescribed."

The jury's verdict was mixed. The jury rejected entirely the plaintiffs' claim that DCLP had violated the CPPA by employing misleading billing practices.[4] The jury agreed with the plaintiffs, however, that DCLP's $5.00 late fee did not bear a reasonable relationship to the anticipated or actual loss that DCLP was caused by late paying subscribers and so was not a valid liquidated damages provision. The jury found that DCLP had incurred actual costs attributable to late payment of only $2.43 per delinquent subscriber—rather more than the plaintiffs had acknowledged, but less than half of what DCLP had charged and far less than what DCLP had claimed at trial. Coupled with the trial court's ruling on the applicable statute of limitations and certain other trial court rulings that will be described momentarily, these findings translated into a compensatory damages award to the plaintiff class of slightly over $3.4 million.

The jury further found that in charging the invalid $5.00 late fee, DCLP had acted maliciously or outrageously so as to subject itself to punitive damages. Based on that finding, the trial court decided to permit the jury to consider awarding either punitive or treble damages under the CPPA. In making this decision, the court rejected both DCLP's contention that its imposition of an invalid late fee was not a

---

Only when all these measures had been tried without success did DCLP write an account off as a bad debt and turn it over to an outside collection agency.

**3.** The plaintiffs presented expert testimony that a fair rate of interest on overdue payments, one that many other companies charged, would have been in the range of 1% to 1.5% a month (12% to 18% annually). As the average DCLP subscriber's monthly bill was around $50, this testimony suggested that in most cases a cost-justified late charge would have been less than a dollar.

**4.** In view of how the issue was presented to the jury, this finding did not address the plaintiffs' separate claim that the $5.00 late fee was intrinsically misleading in addition to being an invalid penalty.

violation of the CPPA and the plaintiffs' contention that the CPPA entitled them to elect to receive treble damages as an alternative to punitive damages without further jury consideration. Following the receipt of evidence pertaining to DCLP's net worth in a second phase of the trial, the jury rejected the option of treble damages and awarded punitive damages of nearly $3.3 million.

In the aftermath of the jury's verdict, both sides submitted post-trial motions. In deciding those motions the trial court rendered key rulings that shaped the ultimate award and that are central to this appeal. The court set forth these rulings with care and clarity in written memoranda that we have found very helpful in resolving this appeal. First, the court upheld the jury's determination that the $5.00 late fee was not a valid liquidated damages provision and ruled that DCLP's unilateral imposition of the fee constituted an unfair trade practice within the meaning of the CPPA. Based on this ruling, the court awarded the plaintiff class over $425 thousand in attorneys' fees, relief that the CPPA made available to prevailing plaintiffs. Second, although the CPPA also permitted the award of punitive damages in appropriate cases, the court ruled as a matter of law that the evidence adduced at trial was insufficient to establish malicious or outrageous conduct on DCLP's part by clear and convincing evidence. The court therefore set aside the jury's $3.3 million punitive damages award. The court's ruling that malice had not been shown also cleared the way for DCLP to recoup its actual late payment damages as measured by the jury's determination that $2.43 of the late fee was cost-justified. The court therefore required DCLP to disgorge only the unjustified excess portion, or 51.4 percent,[5] of the late fee revenues it had col-

lected instead of the entire amount; as a consequence, the compensatory damages award was $3.4 million rather than nearly twice that amount. Third, and finally, the court denied prejudgment interest on the compensatory damages award.

In sum, the monetary judgment in favor of the plaintiff class consisted of compensatory damages plus attorneys' fees and costs, and totaled approximately $3.85 million.

## II.

On appeal, DCLP does not challenge the jury's determination that the $5.00 late fee was not a valid liquidated damages provision, and hence DCLP does not seek to overturn the $3.4 million compensatory damages award. For their part, the plaintiffs do not challenge the jury's determination that the costs that DCLP actually incurred on account of late payments would have justified a late fee amounting to $2.43. Nor do the plaintiffs seek to overturn the jury's rejection of their claim that DCLP's billing practices (aside from the imposition of the late fee itself) were misleading and violated the CPPA. Therefore we take those jury determinations as a given, and as the starting point for our review of the challenges that the parties do make in this court.

DCLP contends that the trial court erred in ruling that its imposition of an invalid late fee was actionable under the CPPA and that the plaintiffs could recover their attorneys' fees under that statute. We reject these contentions and affirm both rulings.

The plaintiffs raise several issues. They contend that the trial court erred in refusing to let them elect to receive treble damages under the CPPA in lieu of puni-

5. ($5.00 - $2.43)/$5.00 = .514.

tive damages, and in setting aside the punitive damages award after the jury found that DCLP's conduct was malicious and outrageous. The plaintiffs further contend that the court erred in allowing DCLP to recoup its actual damages, *i.e.*, in failing to require DCLP to disgorge all the late fee revenues it collected. Finally, the plaintiffs contend that the court erred in refusing to apply the U.C.C.'s four-year statute of limitations for breach of contract actions, and in refusing to award prejudgment interest. We hold that the CPPA entitled the plaintiffs to an award of treble damages. We also agree with the plaintiffs that prejudgment interest was a component of their damages that should have been included in their award before trebling. We reject the plaintiffs' other contentions.

## A. Violation of the Consumer Protection Procedures Act

The trial court concluded that DCLP's unilateral imposition on consumers of a $5.00 late fee was actionable under the CPPA either as a trade practice that violated common law and U.C.C. requirements for a valid liquidated damages provision[6] or, alternatively, as an implicit misrepresentation to consumers in violation of the CPPA itself[7] that the fee reflected a good faith attempt to estimate in advance the damages that DCLP would sustain from late payment of its bills. Challenging both rationales, DCLP argues that the Sales Article of the U.C.C. does not apply to the sale of cable television services[8] and that any question of an implicit misrepresentation should have been submitted to the jury and not decided as a matter of law by the court.[9]

We do not reach DCLP's specific arguments, and we express no opinion on their merits. It is immaterial whether the late fee violated the U.C.C.'s liquidated damage provision or the CPPA's prohibition against misrepresentations. The late fee violated the rules of the District's common law. That violation was a sufficient predicate by itself for DCLP's unilateral imposition of the late fee on its subscribers to be actionable under the CPPA.

"The Consumer Protection Procedures Act is a comprehensive statute designed to provide procedures and reme-

---

6. The trial court assumed that the CPPA would not apply to a liquidated damages provision that was "bilaterally arrived at in an arms-length business transaction" merely because the provision failed to meet U.C.C. or common law requirements. "But," the court explained, "that is not the case before us":

> Instead, we have a late fee unilaterally imposed pursuant to an adhesive contract where, notwithstanding that actual damages were ascertainable through historical costs, no effort whatsoever was made to forecast those damages. This was admittedly a minatory late fee, imposed by a licensed monopoly without any reflection upon costs.

7. D.C.Code § 28–3904(e) makes it an unlawful trade practice under the CPPA for any person to "misrepresent as to a material fact which has a tendency to mislead." *See also* D.C.Code § 28–3904(f), which makes it un-

lawful to "fail to state a material fact if such failure tends to mislead."

8. Citing in particular *Kaplan v. Cablevision of Pa., Inc.*, 448 Pa.Super. 306, 671 A.2d 716, 724–25 (1996), DCLP contends that the cable services it sold were not "goods" within the meaning of D.C.Code § 28:2–102 (2001) and hence not within the scope of the Sales Article.

9. *See* footnote 4, *supra*. DCLP contends that it was not required to make an advance estimate of damages for its liquidated damages provision to be valid, that it had no duty to disclose its failure to make such an advance estimate, and that a factual dispute existed over whether it had made an adequate advance estimate of late payment damages. There may have been factual issues as well surrounding the question of the materiality of the alleged implicit misrepresentation.

dies for a broad spectrum of practices which injure consumers." *Atwater v. District of Columbia Dep't of Consumer & Reg. Affairs,* 566 A.2d 462, 465 (D.C.1989). While the CPPA enumerates a number of specific unlawful trade practices, *see* D.C.Code § 28–3904, the enumeration is not exclusive. *See Atwater,* 566 A.2d at 465. A main purpose of the CPPA is to "assure that a just mechanism exists to remedy *all* improper trade practices." D.C.Code § 28–3901(b)(1) (emphasis added). Trade practices that violate other laws, including the common law, also fall within the purview of the CPPA. *See Atwater,* 566 A.2d at 465–66 (citing D.C.Code § 28–3905(b)); *accord, Osbourne v. Capital City Mortg. Corp.,* 727 A.2d 322, 325–26 (D.C.1999) ("[T]he CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by § 28–3904, but to all other statutory and common law prohibitions.").

The CPPA provision pursuant to which the plaintiffs sued DCLP was former D.C.Code § 28–3905(k)(1) (1996). That section read as follows:

(k)(1) Any consumer who suffers any damage as a result of the use or employ-

ment by any person of a trade practice [10] in violation of a law of the District of Columbia within the jurisdiction of the Department [of Consumer and Regulatory Affairs] may bring an action in the Superior Court of the District of Columbia to recover or obtain any of the following:

(A) treble damages;

(B) reasonable attorneys' fees;

(C) punitive damages;

(D) any other relief which the court deems proper.[11]

Inasmuch as the Department's jurisdiction extended to trade practices that violated "any statute, regulation, *rule of common law,* or other law, of the District of Columbia," D.C.Code § 28–3905(b)(2) (emphasis added), the plaintiffs could predicate their CPPA action on DCLP's violation of the common law.

 The common law views liquidated damages clauses with a gimlet eye. Such clauses may serve valuable purposes, as where actual damages are likely to be difficult to quantify in the event that the contract is breached.[12] When a liquidated

---

**10.** The term "trade practice" is defined in the CPPA to mean "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services." D.C.Code § 28–3901(a)(6). It is undisputed that the term encompasses a cable television service contract and any provision for liquidated damages that such a contract might contain.

**11.** D.C.Code § 28–3905(k)(1) has been amended and now reads as follows:

(k)(1) A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in viola-

tion of a law of the District of Columbia and may recover or obtain the following remedies:

(A) treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

(B) reasonable attorney's fees;

(C) punitive damages;

(D) an injunction against the use of the unlawful trade practice;

(E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or

(F) any other relief which the court deems proper.

**12.** *See, e.g., Leeber v. Deltona Corp.,* 546 A.2d 452, 455 (Me.1988) (noting that liquidated

damages provision is the product of fair arm's length bargaining, particularly between sophisticated parties, common law suspicions may be eased and more latitude may be afforded the contracting parties to agree as they wish on the remedies for breach. *See, e.g., Wilmington Trust Co. v. Aerovias de Mexico, S.A. de C.V.*, 893 F.Supp. 215, 218 (S.D.N.Y.1995) ("Relevant to this inquiry is the sophistication of the parties and whether both sides were represented by able counsel who negotiated the contract at arms length without the ability to overreach the other side."). But where there is a disparity of bargaining power and one party unilaterally imposes a liquidated damages provision in an adhesive contract, the skepticism (bordering, it has been suggested, on outright hostility) shown by the common law to liquidated damages is at its height. And when this set of circumstances occurs in a consumer context, it is a natural subject for consumer protection legislation such as the CPPA. *Cf. Weber, Lipshie & Co. v. Christian*, 52 Cal.App.4th 645, 60 Cal.Rptr.2d 677, 681 (1997) (noting that California law imposes "stricter requirements" for liquidated damages clauses in consumer transactions).

■■■ For a liquidated damages clause to be valid and enforceable, and not void as a penalty, the common law insists that "the

liquidated damages must not be disproportionate to the level of damages reasonably foreseeable at the time of the making of the contract." *Council v. Hogan*, 566 A.2d 1070, 1072 (D.C.1989). "[A]greements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced." *Order of AHEPA v. Travel Consultants, Inc.*, 367 A.2d 119, 126 (D.C.1976) (citation omitted). Where the liquidated damages provision is "designed to make the default of the party against whom it runs more profitable to the other party than performance would be, it will be void as a penalty." *Id.* And "[w]hen a contract specifies a single sum in damages for any and all breaches even though it is apparent that all are not of the same gravity, the specification is not a reasonable effort to estimate damages; and when in addition the fixed sum greatly exceeds the actual damages likely to be inflicted by a minor breach, its character as a penalty becomes unmistakable." *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir.1985).[13]

■■■ The jury found that the $5.00 late fee in this case fell "within the gravitational field of these principles." *Id.* DCLP does not contest that finding, and like the

damages function "as an economical alternative to the costly and lengthy litigation involved in a conventional breach of contract action," and that "[e]fforts by contracting parties to avoid litigation and to equitably resolve potential conflicts through the mechanism of liquidated damages should be encouraged."). As the court stated in *Wassenaar v. Panos*, 111 Wis.2d 518, 331 N.W.2d 357, 362 (1983), "considerations of judicial economy and freedom of contract favor enforcement of stipulated damages clauses." Such clauses enable the contracting parties to control their exposure to risk, achieve economic efficiency, avoid the uncertainty, delay, and expense of the judicial process, and "correct what the parties perceive to be inadequate judicial

remedies by agreeing upon a formula which may include damage elements too uncertain or remote to be recovered under rules of damages applied by the courts." *Id.*

13. The same principles are incorporated in the Sales Article of the U.C.C. D.C.Code § 28:2–718(1) provides:

Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

trial court, we accept it as both binding and supported by the evidence. The $5.00 charge was not shockingly disproportionate to the average loss of $2.43 that DCLP incurred from a delayed payment, but the jury reasonably could find that the charge was arbitrary, excessive, and designed in such a way that it took advantage of many thousands of individual consumers and made their cumulative defaults millions of dollars more profitable to DCLP than their timely performance would have been. Accepting the full $5.00 late fee as an imposition on consumers that was void and unenforceable under the common law of the District of Columbia, we hold that consumers could invoke the CPPA to challenge that imposition as an unlawful trade practice.

▉▉ DCLP contends, however, that the plaintiff class did not "suffer any damage as a result of" DCLP's employment of the invalid late fee as required by former D.C.Code § 28–3905(k)(1). Such consequential damage was a "condition precedent" to bringing suit under the CPPA. *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 204 (D.C.1991). DCLP's position is that "the plaintiffs cannot prove actual injury caused by DCLP's conduct, because they could have avoided any injury by paying their bills on time." This is not persuasive; whether the plaintiffs could have avoided injury by paying on time is a different question from whether the illegitimate late fee injured them after they failed to pay on time. The fact that the members of the plaintiff class were delinquent in paying their bills did not make them fair game for overreaching trade practices. Once they were delinquent, class members were obligated to pay the late fee to retain their cable television service, and DCLP caused them actual injury by overcharging them.[14]

## B. Treble and Punitive Damages

The CPPA permitted the plaintiffs in this case to sue to obtain "any of the following: (A) treble damages; (B) reasonable attorneys' fees; (C) punitive damages; (D) any other relief which the court deems proper." *See* D.C.Code § 28–3905(k)(1). Viewing treble damages as a species of punitive damages, and subject to the same proof requirements, the trial court refused to award treble damages to the plaintiff class automatically. Instead the court allowed the jury to decide, in its discretion, whether to award treble damages or punitive damages in whatever amount it saw fit. After the jury chose the latter alternative, the court set aside the punitive damages award for insufficient evidence. This left the plaintiff class with neither treble nor punitive damages. We agree with the trial court that the evidence was insufficient to entitle the class to punitive damages. However, based on our review of the statutory language and its legislative history, we conclude that the class was entitled to a trebling.

▉▉▉ Punitive damages are "a form of punishment." *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 938 (D.C.1995). Their purpose is "to punish unlawful conduct and to deter its repetition." *Daka, Inc. v. Breiner,* 711 A.2d 86, 98 (D.C.1998). Punitive damages are, accordingly, to be awarded only in cases of outrageous or egregious wrongdoing where the defendant has acted with evil motive, actual malice, or in willful disregard for the rights of the plaintiff. *See id.* at 98–99. So, for example, in the absence of "gross

---

14. DCLP's alternative claim that the plaintiffs did not establish actual or reasonable reliance on DCLP's violation of the CPPA strikes us as being equally unpersuasive. The plaintiffs paid the excessive late fee.

fraud" or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages. *See Boynton v. Lopez,* 473 A.2d 375, 377–78 (D.C.1984). To obtain an award of punitive damages, moreover, the plaintiff must prove egregious conduct and the requisite mental state by clear and convincing evidence.[15] *See Jonathan Woodner Co.,* 665 A.2d at 938. These requirements apply to punitive damages sought pursuant to the CPPA. *See Osbourne,* 727 A.2d at 326. Indeed, given the ready availability of treble damages under the CPPA (as we shall see shortly), there is all the more reason to insist that the usual conditions for awarding punitive damages not be waived.

 We agree with the trial court's analysis that the evidence was insufficient under the foregoing standards to support the jury's award of punitive damages in this case.[16] After fixing its late fee at $5.00, DCLP openly acknowledged to the administrative agency responsible for regulating cable television services in the District of Columbia that the amount of the fee was not cost-based, but instead was designed to deter delinquencies. That was a legitimate business goal even if DCLP overstepped the bounds in pursuing it. Although the Office of Cable Television questioned the late fee, the Office did not challenge its legality. Moreover, while the amount of the late fee proved to be too high to meet the test for a valid liquidated damages provision, it was not wholly out of proportion to what the jury found to be a legitimate charge or to what other cable television providers charged.

 Treble damages are a different story. Statutory provisions for double or treble damages often do serve the same penal purposes as punitive damages. *See Beard,* 587 A.2d at 203 (stating the general rule of thumb that statutes "which provide for sanctions disproportionate to the violations or to the damage done, are penal in nature and must be strictly construed").

15. Thus, the standard instruction in this jurisdiction tells the jury that it "may award punitive damages only if the plaintiff has proved with clear and convincing evidence: (1) that the defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; and (2) that the defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff." STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 16.01[1].

16. The core of the trial court's analysis is contained in the following excerpt from its opinion disposing of post-trial motions:

That defendant imposed an improper late fee without regard to its costs does not evidence that it did so in a malicious or unprincipled manner. It could have equally done so out of ignorance of the law which, although irrelevant to compensatory damages, militates against an evil intent and punitive damages. Indicative of an untutored and innocent mind is the guilelessness with which defendant's general manager in 1991 admitted at the OCT [Office of Cable Television] annual review that the late fee was not cost based but, instead, was aimed at assuring prompt payment by subscribers. "Where an act, though wrongful in itself, is committed in the honest assertion of a supposed right ..., there is no ground on which punitive damages can be awarded." (Citations omitted.)

Further, the evidence disclosed a mixed picture of late fees in the cable industry with some companies charging five dollars while others assessed a lesser amount. While an industry standard cannot control the determination of the reasonableness of such a charge, as the jury was instructed ..., the fact that defendant's charge was comparable to that charged by some other companies is indicative of its not being whimsical or unscrupulous. (Citations omitted.)

The trial court also took into account the jury's rejection of the plaintiffs' other claims of abusive billing practices on DCLP's part.

When the award of multiple damages is intended to serve penal purposes, it is a substitute for punitive damages, and the same or similar proof requirements usually must be satisfied. *See, e.g., Barth v. Canyon Cty.*, 128 Idaho 707, 918 P.2d 576, 581 (1996) ("In the cases where treble damages are a penalty, the Court insists that the plaintiff show that the defendant acted maliciously, wantonly, or oppressively (i.e., in bad faith) before the Court will award treble damages."); *Harris v. Manor Healthcare Corp.*, 111 Ill.2d 350, 95 Ill.Dec. 510, 489 N.E.2d 1374, 1379 (1986) ("[W]e agree with the parties that the treble-damages provision of the Act is punitive in nature, and that recovery of both treble damages and common law punitive damages would, under the circumstances of this case, constitute a double recovery for a single injury.") (citations omitted); *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 198 N.W.2d 363, 368 (1972) (holding that punitive damages may not be awarded in addition to statutory treble damages; "[o]ur court has long taken the view [that] a statute creating a cause of action for treble damages is punitive in nature to the extent damages above the actual damages are recovered and the statute must be strictly construed"). *See generally* 22 AM. JUR. 2D *Damages* § 816 (1988); Lisa K. Gregory, Annotation, *Plaintiff's Rights to Punitive or Multiple Damages When Cause of Action Renders Both Available*, 2 A.L.R. 5th 449 (1992).

 On the other hand, multiple damages provisions may be enacted to serve remedial rather than punitive purposes, such as ensuring full compensation or encouraging private enforcement of the law:

> Specifically, some double or treble damages statutes, and also specified "civil penalties," are intended to provide a kind of liquidated damages for actual losses that cannot be proved or that are otherwise unrecognized by the law. Some may be intended to offer the carrot of multiplied damages as an inducement to sue on issues of public importance which might otherwise be financially unattractive to lawyers or litigants.

1 DAN B. DOBBS, LAW OF REMEDIES § 3.12 at 543–44 (footnotes omitted) (2d ed.1993) (hereafter, "DOBBS, LAW OF REMEDIES"). For example, the Supreme Court has explained that two prominent federal treble damages provisions serve these non-punitive goals:

> Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees. Both statutes bring to bear the pressure of "private attorneys general" on a serious national problem for which public prosecutorial resources are deemed inadequate; the mechanism chosen to reach the objective in both the Clayton Act and RICO is the carrot of treble damages.

*Agency Holding Corp. v. Malley–Duff & Assocs., Inc.* 483 U.S. 143, 151, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). When treble damages are awarded for remedial purposes, they are not a substitute for punitive damages and the heightened proof requirements for punitive damages do not apply.[17] Because the two types of award

**17.** This court has experience with statutes that authorized treble damages without the showing required for punitive damages. *See Interstate Gen. Corp. v. District of Columbia Rental Hous. Comm'n*, 501 A.2d 1261, 1264–65 (D.C.1985) (holding that the Rental Housing Act of 1977 authorized treble damages without regard to willfulness or bad faith on the part of the defendant landlord); *see also Jerome Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n*, 682 A.2d 178, 185 (D.C.1996) (noting that the more recent ver-

serve different purposes, some statutes allow both treble and punitive damages to be assessed in appropriate cases. *See, e.g., Aronson v. Creditrust Corp.,* 7 F.Supp.2d 589, 594 (W.D.Pa.1998) (holding that Pennsylvania's unfair trade practices and consumer protection law allows award of treble damages and punitive damages); *Toyota of Florence, Inc. v. Lynch,* 314 S.C. 257, 442 S.E.2d 611, 616 (1994) (upholding award of double damages and punitive damages where statutorily authorized); *cf. Equitable Life Leasing Corp. v. Abbick,* 243 Kan. 513, 757 P.2d 304, 307 (1988) (upholding imposition of civil penalty and punitive damages under Kansas consumer protection statute, where purpose of civil penalty is to encourage enforcement by consumers acting as private attorneys general).[18]

In D.C.Code § 28–3905(k)(1), treble damages evidently serve a remedial rather than a punitive purpose because the statute expressly states that both treble damages and punitive damages are available. "The word 'any,' together with the absence of the word 'or' between [the remedial] options (A) through (D) [in former § 28–3905(k)(1) ], indicates that courts may award any one or any combination of the listed remedies." *Williams v. First Gov't*

*Mortg. and Investors Corp.,* 225 F.3d 738, 745, 343 U.S.App. D.C. 222, 229 (2000). The legislative history of the statute confirms that treble damages and punitive damages were intended to serve different purposes and are both recoverable. According to the report on the bill that became the CPPA,

> Treble damages and reasonable attorneys' fees are recoverable in order to encourage the private bar to take such cases. Punitive damages are also recoverable, and the standards the courts would use in determining them are the amount of actual damages awarded, the frequency, persistence, and degree of intention of the merchant's unlawful trade practice, and the number of consumers adversely affected.

REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS, ON BILL 1–253, "The District of Columbia Consumer Protection Procedures Act," at 23 (March 24, 1976).[19]

██ Since the purpose of treble damages under the CPPA is remedial rather than punitive, the plaintiffs in this case were entitled to an award of treble damages without the showing of egregious con-

---

sion of Rental Housing Act conditions the award of treble damages on a showing of bad faith).

**18.** Professor Dobbs agrees with the principle underlying these cases and adds a worthwhile (and, for the present case, pertinent) caveat:

> If the treble damage or civil penalty statute is not punitive but has a purely remedial purpose not served by punitive damages, then presumably both the statutory and the common law punitive damages award would be permissible. But even here, punitive damages may be denied under a statutory cause of action if the statute sets up a comprehensive remedial scheme and makes no mention of punitive damages, because

such a statute generates a negative inference.

1 DOBBS, LAW OF REMEDIES § 3.12 at 546 (footnotes omitted). The CPPA sets up a "comprehensive remedial scheme" and explicitly mentions punitive damages along with treble damages.

**19.** The word "or" now appears in the listing of remedies in the current version of the statute, *see* D.C.Code § 28–3905(k)(1)(E), quoted in note 11, *supra.* However, the Council amended D.C.Code § 28–3905(k)(2) in 2000 to state specifically that "[t]he remedies or penalties provided by this chapter are cumulative . . . ." The revisions of the statute do not cause us to doubt the conclusions we reach about the former version.

duct and malice required for punitive damages. We agree with the *Williams* court that "[o]nce it is established that a consumer [has] suffered any damage, the CPPA authorizes courts to treble damages without further findings." *Id.,* 225 F.3d at 745, 343 U.S.App. D.C. at 229 (internal quotation marks omitted).

It remains to consider what damages were to be trebled in this case. We must resolve three issues: the applicable statute of limitations, DCLP's right to recoup its proven actual damages, and the availability of prejudgment interest as a component of damages.

### C. Issues Affecting the Computation of Plaintiffs' Damages

#### 1. *Statute of Limitations.*

■ The Sales Article of the Uniform Commercial Code contains a four-year statute of limitations. D.C.Code § 28:2–725(1) (2001) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." DCLP argued, and the trial court agreed, that this provision is inapplicable to the plaintiffs' causes of action and that, instead, D.C.Code § 12–301(8) (2001) applies. That statute supplies a three-year limitations period for all actions "for which a limitation is not otherwise specially prescribed."

■ We agree with DCLP and the trial court. We need not settle the debate over whether the Sales Article of the U.C.C. applies generally to cable television service contracts. *See* note 8, *supra.* Regardless of the answer to that question, the four-year statute of limitations in the Sales Article is inapplicable because the plaintiffs did not sue for "breach" of any contract. The hornbook definition of the term "breach of contract" is "an unjustified failure to perform all or any part of

what is promised in a contract." *Fowler v. A & A Co.,* 262 A.2d 344, 347 (D.C.1970) (internal quotation marks and citation omitted). The plaintiffs did not contend that DCLP breached its contracts with them by charging the $5.00 late fee; they merely sought to invalidate that charge and recover sums they had paid. The plaintiffs' claims therefore were not governed by the statute of limitations for breach of contract actions. As those claims also were not "specially" governed by any other statute of limitations, the residual clause of D.C.Code § 12–301(8) applied.

#### 2. *Recoupment*

The plaintiffs contend that the trial court erred in allowing DCLP to keep a portion of the invalid late fees that it collected ($2.43 out of every $5.00 payment). The plaintiffs argue that the court should have required DCLP to disgorge the late fees in their entirety because the late fee provision was void. To the contrary, we hold that the trial court correctly permitted DCLP to recoup what the jury determined (and what the plaintiffs do not dispute) were DCLP's actual damages. We further hold that it is the net figure rather than the gross figure—*i.e.,* the amount of the plaintiffs' overpayment rather than the full amount of the late fees that they paid—that is subject to trebling under the CPPA.

■ It is true that an exorbitant liquidated damages provision is void and will not be enforced. Where exorbitant liquidated damages have been collected, disgorgement is therefore an appropriate remedy. But the invalidation of a contractual liquidated damages provision does not deprive the non-breaching party of a remedy for the other party's breach of the contract. The non-breaching party is entitled to prove and recover—or recoup, if it

is the defendant—its actual damages. *See H.J. McGrath Co. v. Wisner*, 189 Md. 260, 55 A.2d 793, 796 (1947) ("[I]t does not follow [from invalidation of liquidated damages] that the defendant was precluded from showing damages by way of recoupment."); *see also Lake River Corp.*, 769 F.2d at 1292 ("The parties did not contract explicitly with reference to the measure of damages if the agreed-on damage formula was invalidated, but all this means is that the victim of the breach is entitled to his common law damages.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 356, cmt. a (1981)); *Kingston Constructors, Inc. v. WMATA*, 930 F.Supp. 651, 656 (D.D.C.1996) ("Where a liquidated damage clause is stricken, only actual damages may be recovered.").

■ The jury found that DCLP's actual damages amounted to $2.43 per late payment, presumably on the premise, not challenged here, that subscribers contractually obligated themselves to pay a reasonable charge to reimburse DCLP for its collection costs if they failed to pay on time.[20] DCLP was entitled to recoup its actual damages; to put it differently, the plaintiffs' net damages were not the total amount of the late fees they paid, but only the unjustified excess portion thereof ($2.57 per late payment). *See Burch*, 732 A.2d at 901 (awarding damages representing the difference between the invalid late

fees that the plaintiff paid to the defendant cable television service and the defendant's actual damages sustained as a result of late payments).

■ The CPPA entitles the plaintiffs to three times the actual damages they suffered from DCLP's wrongful conduct. As a recoupment of damages intrinsic to the late payments rather than a setoff of an extrinsic claim,[21] DCLP's recovery is deducted from the plaintiffs' gross damages before rather than after trebling. So, for example, when a company is victimized by price-fixing, its damages that may be trebled are not the total price it paid, but rather the overcharge. *See Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 385 (4th Cir.1982) ("Plaintiffs are entitled to recover the overcharge stemming from the illegal combination—i.e., the difference between the prices actually paid and the prices that would have been paid absent the conspiracy.") Where the victimized company had reduced some of its damages by obtaining a price reduction in the form of kickbacks, "these savings [too] were properly deducted from the damage award before trebling." *Id.* at 387–88. Similarly, when an employee sued under the Fair Labor Standards Act to recover double damages for being paid insufficient wages, the Second Circuit calculated the wages due and then subtracted the wages that had been paid

---

**20.** *Cf. United Cable Television of Baltimore Ltd. P'ship v. Burch*, 354 Md. 658, 732 A.2d 887, 892 (1999) (invalidating cable company's $5.00 late fee as a penalty and holding that contract did not entitle company to recover costs of collection, but only the amount promised to be paid plus interest at the lawful rate from the due date to the date of judgment).

**21.** The Supreme Court of Wisconsin concisely stated the difference between a setoff and a recoupment as follows:

A setoff is a demand which the defendant has against the plaintiff, arising out of a

transaction *extrinsic* to the plaintiff's cause of action. ... A recoupment, on the other hand, is a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the *same* transaction.

*Zweck v. D P Way Corp.*, 70 Wis.2d 426, 234 N.W.2d 921, 925 (1975). *See Griffith v. Butler*, 571 A.2d 1161, 1164 (D.C.1990) (discussing setoff); *Lofchie v. Wash. Square Ltd. P'ship*, 580 A.2d 665, 667–68 (D.C.1990) (discussing recoupment).

before applying the multiplier. *See Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2d Cir.2002).[22] So here too, it is not the gross amount of late fees that the plaintiffs paid, but the net amount of the overcharge that represents the plaintiffs' actual damages and that should be trebled.

### 3. Prejudgment Interest

The plaintiffs requested prejudgment interest on their damages award pursuant to D.C.Code § 15–108 (2001). That statute provides that "[i]n an action ... to recover a liquidated debt on which interest is payable by contract or by law or usage, the judgment for the plaintiff shall include" prejudgment interest.[23] Although the trial court considered the "equitable arguments" in support of prejudgment interest to be "persuasive," the court denied the plaintiffs' request on the ground that the amount DCLP owed had not been liquidated.[24] The issue is a subtle one, but we conclude that the plaintiffs were entitled to prejudgment interest as a component of their actual damages prior to trebling.

■ By the terms of D.C.Code § 15–108, the judgment for the plaintiff "shall"

include prejudgment interest if: (1) the action is one to recover a liquidated debt, and (2) interest is payable on that debt by contract or by law or usage. Where both statutory conditions are met, prejudgment interest is mandatory. *See Nolen v. District of Columbia*, 726 A.2d 182, 184 (D.C. 1999). In this case there is no dispute that the second condition is satisfied, presumably because it is indeed customary to pay interest on funds that are withheld and not paid when due (as the late fees charged by DCLP might be said to illustrate.) *See id.* at 184–85. The only dispute is over whether the plaintiffs' action was one to recover a liquidated debt within the meaning of the statute.

■ "A liquidated debt is one which 'at the time it arose, ... was an easily ascertainable sum certain.'" *District of Columbia v. Pierce Assocs., Inc.*, 527 A.2d 306, 311 (D.C.1987) (quoting *Kiser v. Huge*, 170 U.S.App. D.C. 407, 421, 517 F.2d 1237, 1251 (1974), *rev'd in part on other grounds*, 171 U.S.App. D.C. 1, 517 F.2d 1275 (1975) (en banc)). Plaintiffs argue that their claim was for an easily ascer-

---

**22.** In contrast, setoffs, which are extrinsic to the transaction in issue, are assessed after the initial damages are multiplied. *See, e.g., United States v. Bornstein*, 423 U.S. 303, 315, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) (holding that the government's damages from a contractor's false claim should be doubled before subtracting settlement payments that the government received, and noting that allowing defendants to avoid liability for multiple damages by paying the actual damages in settlement would frustrate the purpose of multiple damage statutes); *Baughman v. Cooper–Jarrett, Inc.*, 530 F.2d 529, 533 (3d Cir.1976) (holding that setoff for settlement "is made against the trebled damage award, not merely against the compensatory amount determined by the jury"); *see also* 1 DOBBS, LAW OF REMEDIES § 3.12 at 548–49.

**23.** In its entirety, D.C.Code § 15–108 reads as follows:

In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

**24.** The plaintiffs did not seek prejudgment interest under D.C.Code § 15–109 (2001), which authorizes the trier of fact to include interest as an element of damages "if necessary to fully compensate the plaintiff." *See Federal Mktg. Co. v. Virginia Impression Products Co.*, 823 A.2d 513, 532 (D.C.2003). We therefore have no occasion to address the applicability of § 15–109 to this case.

tainable sum certain, namely the full ("liquidated damages") amount of the void $5.00 late fees that the plaintiff class had paid. DCLP responds that while the plaintiffs' claim was ascertainable, it was reduced by an unliquidated amount—the actual damages that DCLP proved at trial—and hence the debt was not liquidated either.

Prejudgment interest is "an element of complete compensation" to a creditor for the loss of use of money that a debtor wrongfully withholds. *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C.1990). Statutes providing for prejudgment interest are thus "remedial and should be generously construed so that the wronged party can be made whole." *Id.* at 1255. Bearing that precept in mind, we observe that D.C.Code § 15–108 focuses on the nature of the plaintiff's action. The statute requires only that the plaintiff's action be one to recover a liquidated debt, not that the debt ultimately adjudicated be liquidated. Consistent with that distinction, we held in *Giant Food, Inc. v. Jack I. Bender & Sons*, 399 A.2d 1293, 1302–03 (D.C.1979), that where a plaintiff's claim is for a liquidated sum, the plaintiff will be entitled to prejudgment interest under § 15–108 even if the plaintiff's recovery is reduced at trial by an unliquidated amount that the plaintiff owes the defendant—whether the defendant's

unliquidated claim is founded on a separate transaction or on the same transaction on which the plaintiff filed suit. In the latter regard, the court differentiated between setoffs and recoupments, albeit the court did not use that precise terminology. In the case of a setoff the plaintiff will be entitled to prejudgment interest on the full amount of its claim, while in the case of a recoupment, the plaintiff will be entitled to prejudgment interest only on the difference between the two claims—what we called in *Giant Food* the "interest on the net balance" approach.[25]

The "interest on the net balance" rule applies in this case. The plaintiffs sued for a liquidated debt, namely the sum total of invalid $5.00 late fees paid to DCLP by the plaintiff class. That liquidated debt was reduced only because DCLP proved an offsetting claim for the actual damages it had sustained from late payments, a claim on which it bore the burden of proof. Since DCLP's offsetting claim was based on the same transactions as the plaintiffs' claim, it was a claim for recoupment. Accordingly, the plaintiff class is entitled under D.C.Code § 15–108 and *Giant Food* to an award of prejudgment interest on the difference (the "net balance"), *i.e.*, the overcharge damages that the class was awarded. Since the prejudgment interest was part of the

---

**25.** In *Giant Food*, Giant sued Bender for a liquidated sum, namely the price for some carpeting specified in a 1973 contract. Bender successfully counterclaimed for unliquidated damages for breach of an express warranty in a related, precursor contract. We concluded that while Bender's claim was "styled as a counterclaim for damages and based on . . . a separate transaction," the claim was properly viewed as "an offset in the nature of a payment [on the 1973 contract] rather than an independent matter unconnected with Giant's claim." *Id.*, 399 A.2d at 1302. Consequently, we held that Giant was entitled to prejudg-

ment interest on the difference between the amount of its liquidated claim and Bender's unliquidated counterclaim, rather than on the entire amount of the liquidated claim. *See id.* at 1303.

We followed the "interest on the net balance" rule adopted in *Giant Food* in *Waverly Taylor, Inc., v. Polinger*, 583 A.2d 179, 184–85 (D.C.1990). *See generally* 1 DOBBS, LAW OF REMEDIES § 3.6(1) at 338 (concluding that "[i]t is the character of the [plaintiff's] original claim that counts, not the vicissitudes of the lawsuit").

class's actual damages, it is added prior to the trebling under the CPPA.

## III.

We affirm the trial court's rulings that the plaintiff class is entitled to relief under the Consumer Protection Procedures Act, including attorneys' fees, for DCLP's practice of charging a late payment fee that violated common law requirements for a valid liquidated damages provision. We also affirm the court's rulings on the applicable statute of limitations, on DCLP's recoupment of its actual damages, and on the insufficiency of the evidence to support an award of punitive damages. We remand for the court to add prejudgment interest to the jury's award of $3.4 million in compensatory damages pursuant to D.C.Code § 15–108 and then to treble those damages pursuant to the CPPA.

*So ordered.*