978 A.2d 603 (2009)
In Re ESTATE OF Mary H. NETHKEN; Frank K. Nethken, et al., Appellants/Cross-Appellees,
v.
Peerless Insurance Company., et al., Appellees/Cross-Appellants.
Nos. 06-PR-1599, 06-PR-1600.
District of Columbia Court of Appeals.
Argued September 5, 2008.
Decided August 20, 2009.
*604 Harry J. Jordan for appellants/cross-appellees.
Eric R. Stanco, Washington, with whom Valerie Elizabeth Powell, was on the brief, for appellees/cross-appellants Peerless Insurance Company.
Before KRAMER, FISHER, and THOMPSON, Associate Judges.
KRAMER, Associate Judge:
Appellants/cross-appellees, nieces and nephews of Mary Nethken ("Mary"), prevailed in their suit against appellee/cross-appellant Peerless Insurance Company ("Peerless") to recover on the surety bond Peerless issued to the administrator of her estate. They contend that assets of Mary's estate that were due them were distributed to others. In its cross-appeal, Peerless challenges that judgment, arguing that the trial court erred in determining that the administrator of Mary's Nethken's estate had committed fraud, in refusing to dismiss the action as untimely, in holding Peerless liable and in making other evidentiary and procedural rulings. The prevailing appellants/cross-appellees argue that the trial court erred in failing to award them prejudgment interest and legal expenses. We reverse the judgment below on the ground that fraud was not established by clear and convincing evidence and that the claim is, therefore, time-barred.

I. Factual Background
Mary was born on May 30, 1906, to Truman Nethken and Blanche Ballusie. Prior to Mary's birth, Truman had had two children with Zada May Day: Frank M. Nethken and Denise Nethken. After Mary was born, her mother, Blanche Ballusie, married Frank Warner, Sr. and had three children with him: Frank Warner, Jr. ("Warner"), William Warner, Sr., and Masie Warner. Therefore, Mary had five half-siblings.
Mary died intestate in Washington, D.C. on September 27, 1979. She had never married and had no children. Mary was predeceased by her half-sister, Masie Warner, who left no children, and her half-brother, William Warner, Sr., who left four children: William, Jr., Glenn, James, and Ellen.
In December 1979, Warner, Mary's half-brother, filed a Petition for Letters of Administration for Mary's estate in Superior Court, which stated that Mary had died intestate leaving only himself as sole heir and next-of-kin, and that the estate was worth $30,000 in stocks and bonds and $750 in household goods. On December 19, 1979, the Superior Court appointed Warner as administrator of Mary's estate and ordered him to file a surety bond in the amount of $2,000. Pursuant to the order, Warner filed a bond issued by Peerless in the amount of $2,000. The Petition for Letters of Administration was later amended to include as heirs the four children of William Warner, Sr. It is unclear whether Warner was aware of the existence of his brother William's children at the time that he filed the original Petition for Letters of Administration. The Amended Petition valued the decedent's estate at over $500,000. As a result, the court ordered Warner to file an additional undertaking of $290,000. He proceeded to *605 increase his surety bond with Peerless to a total amount of $292,000.
Warner's attorney, John Green, Jr., carried out a nationwide search for Mary's heirs. In a petition to the court requesting attorneys' fees, Green stated that
this was the estate of a recluse spinster who had almost no contact with any of her relatives. She died on [sic] an efficiency apartment with over two (2) tons of loose papers in no apparent order laying around. She had several years earlier given the name of the administrator as her next of kin to a police neighborhood inquiry. The administrator had not seen the decedent for over 20 years. The administrator had no knowledge of decedent's holdings and vague recollection of some relatives in New England. Our office conducted a nationwide search using motor vehicle driving records, state death records and funeral information and was finally able to reconstruct the line of sucession [sic] and locate all heirs.
In 1979, Warner, Frank M. Nethken, and Frank K. Nethken, the son of Frank M. Nethken, had all lived in Cumberland, Maryland, a city of approximately 20,000 people. Frank K. Nethken served as mayor of Cumberland from 1978-1982, and he testified at trial that his campaign was widely covered by the local media. Frank M. Nethken and Frank K. Nethken were both listed in the Allegany County Telephone Directory.
In August 1981, Warner filed an Affidavit of Relationships, declaring that he had made a "deligent [sic] search to locate all the heirs at law," and found as heirs only himself and the four children of his brother, William Warner, Sr. On August 11, 1981, Warner filed his First and Final Account of Mary Nethken's estate, reporting total assets of $878,968.04. The court approved the final account on January 10, 1983, which gave roughly half of the estate to Warner and half to the four children of his brother William.
Warner died on March 29, 1988. Frank M. Nethken died on June 7, 1985. Although the exact date is unclear, it appears that Denise Nethken died sometime between 1983 and 2004.
On December 22, 2004, Frank K. Nethken, Roy Nethken, Rance Nethken, and Shirley Nethken Smeltzer, the children of Frank M. Nethken, and Patricia Hartsfield Schmertzler, the daughter of Denise Nethken ("the Nethkens"), filed suit against Warner's estate,[1] Liberty Mutual, which purchased Peerless before this suit was filed, and the children of William Warner, Sr.[2] for fraud, seeking damages in the amount of Mary's estate that they would have received had Warner disclosed their existence during the probate proceeding.
The trial court found that the Nethkens had not discovered that they were entitled to a share of Mary's estate until 2004, and that before 2004, they had no reason to know of their relationship with Mary. The evidence suggests that neither Frank K. Nethken nor Denise Nethken knew that they had a half-sister named Mary. Rance Nethken testified at trial that in 2004, he learned from a television show of a website called "missingmoney.com," which allows users to search for unclaimed property. Roy Nethken searched the website, which listed Mary as having unclaimed property in D.C. The Nethkens then investigated and confirmed their relationship to Mary.
After a bench trial, the court concluded that Warner had committed fraud in not *606 disclosing Frank M. Nethken and Denise Nethken as heirs, that Peerless was jointly and severally liable on the bond issued to Warner, and that the Nethkens' claims were, therefore, not barred by the statute of limitations. The court ordered the successor personal representative to file an Amended Affidavit of Relationships to reflect Mary's heirs as Frank M. Nethken, Denise Nethken, Frank Warner, Jr., and the children of William Warner, Sr.; file a Restated Account showing the correct distributions in accordance with the Amended Affidavit of Relationships; and determine the distributive share of each Appellant. To the extent that sufficient funds were not in the estate, judgment was ordered to be entered jointly and severally against the estate of Warner and Peerless, up to $292,000.

II. Legal Discussion
Because the trial below was a bench trial, the court's findings of fact will be set aside only if clearly erroneous or without evidentiary support. D.C.Code § 17-305(a) (2001); see Bingham v. Goldberg, Marchesano, Kohlman, Inc., 637 A.2d 81, 89 (D.C.1994). Our review of the trial court's legal conclusions, however, is de novo. Davis v. United States, 564 A.2d 31, 35 (D.C.1989).
Peerless argues that the court erred in refusing to dismiss this action as untimely under D.C.Code § 12-301(6) (2001), which states that "[e]xcept as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: ... on an executor's or administrator's bond5 years." This statute has been in effect since before 1979. See D.C.Code § 12-301(6) (1973). We have previously held that the statute of limitations for a claim on a personal representative's bond begins to run when the final account is filed and approved by the Probate Division of the Superior Court. In re Estate of Green, 816 A.2d 14, 15 (D.C.2003). The final account of Mary's estate was filed and approved in 1983, long before this action was filed.
The trial court ruled, however, that the complaint was timely filed because the discovery rule, under which the statute of limitations does not begin to run until the plaintiff knows of or reasonably should know of her claim, applies to claims on an administrator's bond involving fraud. The court relied on In re Estate of Delaney, 819 A.2d 968 (D.C.2003), in which, applying the discovery rule to otherwise time-barred claims of fraud in contesting a will, we stated that "[a]lthough the District of Columbia has a strong interest in prompt and efficient probate for estates, it has an even stronger interest in ensuring that a will admitted to probate is not the result of fraud." Id. at 981. We perceive no reason why the rule should not apply equally to claims of fraud involving an intestate decedent. The District of Columbia likewise has a strong interest in ensuring that fraud does not affect the distribution of estates by the laws of intestacy. We are not the first jurisdiction to recognize such an interest, as other jurisdictions have reopened estates of intestate decedents in cases in which the administrator of the estate has committed fraud by concealing rightful heirs. See, e.g., Stone v. Gulf Am. Fire & Cas. Co., 554 So.2d 346, 352-60 (Ala.1989); Payette v. Clark, 559 So.2d 630, 633-34 (Fla.Dist.Ct.App.1990). If heirs of an intestate decedent bring a claim of fraud after the estate has been closed and the applicable statute of limitations has expired, the discovery rule applies. Thus, to decide whether this action was time-barred, we must determine whether the trial court correctly found that in failing to discover and name the *607 Nethkens in the Affidavit of Relationships, Warner had committed fraud. With all deference to the experienced trial judge, we cannot discover in the record proof of fraud sufficient to meet the demanding test of clear and convincing evidence.
To establish fraud, a court must find by clear and convincing evidence that there was "(1) a false representation, (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation...." Park v. Sandwich Chef, Inc., 651 A.2d 798, 801, 802 n. 3 (D.C.1994) (citations omitted). "Clear and convincing evidence is most easily defined as the evidentiary standard that lies somewhere between preponderance of the evidence and evidence probative beyond a reasonable doubt;" such evidence "would produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Ingersoll v. Ingersoll (In re Ingersoll Trust), 950 A.2d 672, 693 (D.C. 2008) (citation omitted).
The trial court found that Warner had committed fraud by knowingly and falsely stating in the Affidavit of Relationships that he and William Warner, Sr.'s children were Mary's only true heirs. The court reasoned that Warner had been aware of the existence of Frank M. Nethken and Denise Nethken and their relationship to Mary. This presumed knowledge on Warner's part was based on a few pieces of evidence. In 1979, Warner, Frank M. Nethken, and Frank K. Nethken had all lived in Cumberland, Maryland, a city of approximately 20,000 people, and Frank K. Nethken had served as mayor of Cumberland from 1978 to 1982. Additionally, Frank M. Nethken and Frank K. Nethken were both listed in the local phone book at the time. But while this evidence suggests that Warner may have heard of one or more of the Nethkens and, if so, perhaps should have inquired of any relationship they may have had with Mary, it does not establish by clear and convincing evidence that he was actually aware of the Nethkens' existence, much less that he was aware of the Nethkens' relationship to Mary. Warner was not related to the Nethkens, and the evidence suggests, if anything, that Mary and the Nethkens were unaware of each other's existence. If Warner had contacted either of the Frank Nethkens in 1979 and asked if they were related to Mary, the Nethkens might have simply said "no." No evidence showed that Mary had ever lived in Cumberland or had any social or work-related connections there. In these circumstances, the Nethkens' claim that Warner was not only negligent but "larcenous" in administering the estate rests ultimately on his (and his close relatives') having benefitted from the distribution. But that is not a substitute for evidence of fraudulent intent, particularly when it was not shown that Warner's attorney, Green, had somehow colluded in blinding himself and Warner to the existence of the other relatives.
Because fraud was not established by clear and convincing evidence, the Nethkens' claim against Peerless is barred by D.C.Code § 12-301(6). This conclusion makes it unnecessary to consider the other issues raised by Peerless, and moot the issues raised by the cross-appeal.
Reversed.
NOTES
[1] Warner's estate did not file an appearance in the trial court or in this appeal.
[2] The Nethkens settled with the children of William Warner, Sr. before trial.