# District of Columbia
# Court of Appeals

**No. 14-CV-433**

MAIA FALCONI-SACHS,

Appellant,



FILED

JUL - 7 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

CAB-5314-12

LPF SENATE SQUARE, LLC, *et al.*,

Appellees.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges*; and PRYOR, *Senior Judge.*

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's decision is affirmed in part and reversed and remanded in part.

For the Court:

*[signature]*

JULIO A. CASTILLO
Clerk of the Court

Dated: July 7, 2016.

*Per Curiam* opinion for the court.

Concurring opinion by Associate Judge Catharine Easterly.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-433

MAIA FALCONI-SACHS, APPELLANT,

v.

LPF SENATE SQUARE, LLC, *et al*., APPELLEES.

FILED 7/7/16
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-5314-12)

(Hon. Thomas J. Motley, Trial Judge)

(Argued October 13, 2015                 Decided July 7, 2016)

*Daniel Hornal* for appellant.

*Ward B. Coe III*, with whom *David W. Kinkopf*, and *Hillary H. Arnaoutakis*, were on the brief, for appellees.

Before BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges*, and PRYOR, *Senior Judge*.

Per Curiam opinion for the court.

Concurring opinion by *Associate Judge* EASTERLY at page 21.

PER CURIAM: Appellant Maia Falconi-Sachs appeals from an order dismissing her complaint pursuant to Superior Court Rule of Civil Procedure 12 (b)(6) for failure to state a claim. Having paid a late rent fee of $249.85, she

alleges that this fee—assessed and collected by appellees, apartment building LPF Senate Square LLC ("Senate Square"), and Bozzuto Management Company, LLC ("Bozzuto")—was illegal under various theories.  We affirm the Superior Court's 12 (b)(6) ruling as to all claims but one:  Ms. Falconi-Sachs's claim of unjust enrichment.  As to that claim, we reverse and remand for further proceedings consistent with this opinion.

## I.     Facts

On August 24, 2011, appellant and another person (both recent law school graduates) signed a one-year lease agreement—with a term beginning on that date—for a Senate Square apartment at 201 I Street Northeast, Washington, D.C. 20002.  The lease named appellant and the other person as the "Lessee," Senate Square as the "Lessor," Bozzuto as the lessor's "Agent," and set the monthly rent amount at $2,499.00.  The lease section entitled "Rent Payments" included a clause (in capital letters) as follows:

> RENT PAYMENTS NOT RECEIVED BY THE **FIFTH (5TH)** DAY OF THE MONTH FOR WHICH SAID PAYMENT IS DUE SHALL BE SUBJECT TO A LATE PAYMENT CHARGE OF TEN PERCENT (10%) OF THE MONTHLY RENT AND SUCH LATE CHARGE

WILL BE IMMEDIATELY DUE AND PAYABLE AS ADDITIONAL RENT PURSUANT TO THE TERMS OF THE LEASE. PROVIDED, HOWEVER, IN THE EVENT LESSEE FAILS TO PAY THE RENT WITHIN **FIVE (5)** DAYS AFTER THE DUE DATE, SUCH FAILURE SHALL BE CONSIDERED A WILLFUL NON-COMPLIANCE AND THE LESSOR OR ITS AGENTS MAY PROCEED WITH LEGAL ACTION PURSUANT TO STATE LAW. THE LESSEE SHALL BE RESPONSIBLE FOR ALL COSTS, INCLUDING ATTORNEY'S FEES, EXPENDED BY THE LESSOR OR HIS AGENT, IN ENFORCING THE COLLECTION OF ANY DELINQUENT RENT AND/OR LATE CHARGES AS PERMITTED BY STATE LAW. [Emphasis in original]

On April 6, 2012, appellees placed a "Final Notice Letter" under appellant's door, informing her that her April rent had not been received, and that a late fee in the amount of $249.85 was due immediately. Appellant gave appellees a check for $249.85 on April 21, 2012.

## II. Procedural History

On June 27, 2012, appellant filed a class action complaint in the District of Columbia Superior Court, alleging violations of the Consumer Protection Procedure Act ("CPPA"), fraud, negligent misrepresentation, unconscionability, and restitution/unjust enrichment. She amended the complaint on July 12, 2012, in

order to add appellees' addresses for service of process. On August 16, 2012, the case was removed to the United States District Court for the District of Columbia, but later was remanded and appellees were ordered to pay appellant's attorneys' fees. *Falconi-Sachs v. LPF Senate Square, LLC*, 963 F. Supp. 2d 1, 3 (D.D.C. 2013). On February 14, 2013, the case was re-opened in Superior Court, and appellant filed a motion for class certification. Appellant later orally requested without opposition that the motion for class certification be stayed, and the trial court granted her request. On June 21, 2013, appellant filed a subsequent amended complaint. Appellees then filed a motion to dismiss on July 12, 2013, and the motion was granted on February 7, 2014.

The trial court dismissed appellant's CPPA cause of action, holding that it "falls within the realm of landlord-tenant relations and thus outside the scope of the CPPA." The court further held that appellant's fraud and negligent misrepresentation claims failed to meet the respective elements of those torts, that her unconscionability claim failed to plead sufficient facts to show either procedural or substantive unconscionability, and that her unjust enrichment claim was barred by the voluntary payment doctrine. This appeal followed.

### III. Analysis

### A. Scope of Review

This court reviews *de novo* the dismissal of a complaint under Superior Court Rule of Civil Procedure 12 (b)(6) for failure to state a claim on which relief can be granted. *Tingling-Clemmons v. District of Columbia*, 133 A.3d 241, 245 (D.C. 2016). "In so doing, we apply the same standard the trial court was required to apply, accepting the [factual] allegations in the complaint as true and viewing all facts and drawing all reasonable inferences in favor of the plaintiff[ ]." *Id.* (quoting *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011)). "To pass muster," a complaint must "allege the elements of a legally viable claim, and its factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *OneWest Bank, FSB v. Marshall*, 18 A.3d 715, 721 (D.C. 2011)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## B. CPPA

With respect to appellant's CPPA claims, this court has previously addressed the question whether the CPPA applies to landlord-tenant relations. *See Gomez v. Independence Mgmt. of Delaware, Inc.*, 967 A.2d 1276, 1286 (D.C. 2009) (holding that the CPPA does not apply to landlord-tenant relations). In *Gomez*, we found that although the Council of the District of Columbia amended the enforcement provisions of the CPPA to no longer limit the CPPA's private right of action contained in D.C. Code § 28-3905 to the jurisdictional boundaries of the Department of Consumer and Regulatory Affairs ("DCRA")—which "may not . . . apply the provisions of section 28-3905 to . . . landlord-tenant relations"—this limitation had been deleted only for budgetary reasons to remove the DCRA's under-funded role. *Id.* at 1287. In other words, the Council had no intention of "expand[ing] the reach of the CPPA," *id.* at 1287, and "did not intend by that amendment to extend the private right of action created by the CPPA into the realm of landlord-tenant relations." *Id.* at 1286.[2] Accordingly, appellant's CPPA

---

[2] Appellant's argument that this holding was dicta is misplaced. This court in *Gomez*, after deciding that the trial court had erred in granting summary judgment on appellants' Sales Act claim, *affirmed* the dismissal of the CPPA claim —even though the appellants had wholly premised that claim upon on the Sales

(continued . . .)

claims were appropriately dismissed for failure to state a claim upon which relief can be granted.

## C. Fraud

The elements of fraud are "(1) a false representation, (2) made in reference to a *material fact*, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *In re Estate of Nethken*, 978 A.2d 603, 607 (D.C. 2009) (emphasis added). Here, appellant alleges that appellees committed fraud by falsely representing "that [appellant] had

_____

(. . . continued)
Act claim—because it concluded that the CPPA does not apply to landlord-tenant relations. *Gomez*, *supra*, 967 A.2d at 1284-85.

Appellant further claims that this court's decision in *Brandywine Apartments, LLC v. McCaster*, 964 A.2d 162, 170 (D.C. 2009) supports her argument that the logic of *Gomez* only applies, if at all, where an existing landlord-tenant relationship is fundamental to the claim. We find this argument unpersuasive. In *Brandywine*, after a jury ruled for the plaintiff/appellee in a case involving a rejected housing application, we upheld an award of attorneys' fees on the claim. The appellant, however, did not challenge the application of the CPPA, only the award of attorneys' fees. Therefore, the scope of our review in *Brandywine* was limited to whether the trial court abused its discretion in determining the appropriate attorneys' fees. We did not address the substance of the jury's verdict regarding the CPPA claim, instead focusing on the factual record, finding that "the trial court approached the issue of attorney fees in a careful manner." *Id.* at 169. Accordingly, our opinion in *Brandywine* does not affect the applicability of *Gomez* to the facts of this case, which clearly arise from a dispute occurring in a landlord-tenant relationship.

the obligation to pay late fees and attorney's fees." Appellant's claim fails, however, because the alleged misrepresentation is in essence an alleged misrepresentation of *law*, not a misrepresentation of fact. Thus, even when we accept appellant's allegations as true, she fails to allege the second element of fraud, which is material fact. Accordingly, appellant's fraud claim was appropriately dismissed.

### D. Negligent Misrepresentation

To prevail on this claim, appellant must show that appellees (1) "made a false statement or omitted a *fact* that he had a duty to disclose; (2) that it involved a material issue; and (3) that [appellant] reasonably relied upon the false statement or omission to [her] detriment." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (citation omitted, emphasis added).

Here, unlike in the fraud context, a plaintiff alleging negligent misrepresentation "need not allege that the defendant had knowledge of the falsity of the representation or the intent to deceive." *Id.* However, she must still show that the appellees falsely stated (or omitted) a material fact. Thus, as we have already discussed in the fraud context, appellant's negligent misrepresentation

claim fails because they only amount to an allegation that appellees misrepresented the law—not that they misrepresented the facts. Accordingly, the trial court did not err in dismissing appellant's claim for negligent misrepresentation.

## E. Unconscionability

The doctrine of unconscionability is generally applied as an affirmative defense, not a cause of action. *Williams v. Cent. Money Co.*, 974 F. Supp. 22, 28 (D.D.C. 1997) ("The claim of common law unconscionability appears to apply only defensively, for example, as a response to an attempt to enforce a contract.") (citing Restatement (Second) of Contracts § 208 comment g); *see also Findlay v. CitiMortgage*, Inc., 813 F. Supp. 2d 108, 122 (D.D.C. 2011) ("At common law . . . unconscionability was used as a defense in contract actions, not as a basis for obtaining damages in tort.") (citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). For this reason, we do not reach the merits of the parties' arguments regarding the sufficiency of appellant's unconscionability claim and affirm the trial court dismissal of this claim.[3]

---

[3] Although the trial court did not rest its dismissal on this ground, this court may affirm for reasons other those given by the trial court. *Chevalier v. Moon*, 576 A.2d 722, 724 (D.C. 1990) (quoting *Garrett v. Washington Air Compressor Co.*, 466 A.2d 462, 464 n.5 (D.C. 1983)).

## F. Unjust Enrichment/Restitution

The doctrine of unjust enrichment applies "when a person retains a benefit (usually money) which in justice and equity belongs to another." *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005). The recipient of such a benefit has "a duty to make restitution to the other person 'if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it.'" *Id.* (quoting RESTATEMENT OF RESTITUTION § 1 cmt. c (AM. LAW INST. 1937)). The elements of an unjust enrichment claim are "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Communications, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). Here, there is no dispute that appellant adequately pled the first two elements of an unjust enrichment claim: her complaint alleges that she conferred a benefit on appellees by giving them her late-fee payment and that appellees retained the payment. The issue before us is whether the third element of the action was adequately pled.

Appellant acknowledged in her amended complaint that she paid the late fee

pursuant to a provision in her lease. Unjust enrichment claims typically lie in the absence of a contractual arrangement—they provide relief in equity where "circumstances are such that justice warrants a recovery as though there had been a promise." *4934, Inc. v. District of Columbia Dep't of Emp't Servs*., 605 A.2d 50, 55 (D.C. 1992). But the existence of a contract does not automatically foreclose an unjust enrichment claim. As the authors of the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 2 cmt. c (AM. LAW INST. 2011) explain:

> Judicial statements to the effect that "there can be no unjust enrichment in contract cases" can be misleading if taken casually. Restitution claims of great practical significance arise in a contractual context, but they occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations. Applied to any such circumstance, the statement that there can be no unjust enrichment in contract cases is plainly erroneous.

The rule is thus more nuanced: "Considerations of both justice and efficiency require that private transfers be made pursuant to contract whenever reasonably possible, and that the parties' own definition of their respective obligations— *assuming the validity of their agreement by all pertinent tests*—take precedence over the obligations that the law would impose in the absence of agreement." *Id.* (emphasis added); *accord Jordan Keys & Jessamy*, 870 A.2d at 64 ("One who has

entered into a *valid* contract cannot be heard to complain that the contract is unjust, or that it unjustly enriches the party with whom he or she has reached agreement." (emphasis added) (footnote omitted)); *Harrington v. Trotman*, 983 A.2d 342, 347 (D.C. 2009) (explaining that the existence of a contract bars an unjust enrichment claim, "[u]nless there is a basis to set aside a contract as unenforceable").

The viability, and ultimately the success, of appellant's unjust enrichment claim thus depends on whether the late-fee provision in appellant's lease is legitimate and enforceable. Appellant claims it is not; she alleges that the late-fee provision constitutes an invalid penalty provision under the common law, not a valid liquidated damages clause. In other words, appellant asserts that the alleged illegitimacy of the late-fee provision creates the equitable circumstance that supports her claim of unjust enrichment and her plea for restitution.

Liquidated damages clauses in contracts deserve special scrutiny. As we explained in *District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714 (D.C. 2003): "The common law views liquidated damages clauses with a gimlet eye. Such clauses may serve valuable purposes, as where actual damages are likely to

be difficult to quantify in the event that the contract is breached." *Id*. at 724.[4]  But "[w]hen a contract specifies a single sum in damages for any and all breaches even though it is apparent that all are not of the same gravity, the specification is not a reasonable effort to estimate damages; and when in addition the fixed sum greatly exceeds the actual damages likely to be inflicted by a minor breach, its character as a penalty becomes unmistakable." *Id.* (quoting *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir. 1985)).  "Agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced." *Id*. (quoting *Order of AHEPA v. Travel Consultants, Inc*. 367 A.2d 119, 126 (D.C. 1976)).  In other words, where a liquidated damages provision is "disproportionate to the level of damages reasonably foreseeable at the time of the making of the contract," it will be "void as a penalty."  *Id*.

Here, appellant pled detailed facts to support the assertion that her fixed late fee was an unenforceable penalty under *District Cablevision*.  She alleged that the

---

[4]  We are more accepting of liquidated damages provisions when they are the product of "fair arm's length bargaining" between parties of equal sophistication in the negotiated transaction.  828 A.2d at 724.  "But where there is a disparity of bargaining power and one party unilaterally imposes a liquidated damages provision in an adhesive contract, the skepticism (bordering, it has been suggested, on outright hostility) shown by the common law to liquidated damages is at its height." *Id.*

late fee was based on a percentage of the monthly rent and was "not calculated based on a reasonable estimation of anticipated or actual harm caused by a breach of contract," and that the $249.85 fee demanded on April 6, 2012, in fact far exceeded "a reasonable forecast of damages flowing from the breach of the covenant to pay rent" by April 5, 2012. More particularly, appellant alleged that all residents in her apartment building have the same 10% late fee provision in their leases; "[t]he late fee is calculated as a percentage of the total monthly rent, not the net amount of rent due"; "[t]he late fee is the same regardless of how late the payment is made, so long as it is after the 5[th] of the month"; appellant's "breach of her obligation to pay rent by April 5, 2012 [the due date] was nominal" and cost the landlords "far less than $249.90," i.e. the 10% late fee assessed; the landlords could calculate the "cost . . . for any particular payment of late rent . . . with reasonable certainty" and "[t]he late fee of 10 percent charged . . . is far higher than a reasonable forecast of damages flowing from a breach of the covenant to pay rent on time"; the lease is a standard form; tenants must take or leave it and cannot negotiate the late fee provision; and the late fees are not "valid liquidated damages clauses" because, again, they "are not a reasonable estimate of actual damages caused by any tenant's breach."

These allegations were sufficient to support appellant's unjust enrichment claim challenging the landlord's retention of her late fee. *See Iqbal*, 556 U.S. at 678 (holding that to survive a motion to dismiss, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Potomac Dev. Corp.*, 28 A.3d at 544 (interpreting Super. Ct. Civ. R. 8 (a) using the *Iqbal-Twombly* pleading standard); *see also* Super. Ct. Civ. R. 8 (a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). In short, we conclude that appellant, pursuant to Rule 12 (b)(6), has duly stated a claim for unjust enrichment.

The trial court determined, however, that appellant's claim should be dismissed pursuant to "the voluntary payment doctrine." Quoting this court's decision in *Eagle Maintenance Services, Inc. v. D.C. Contract Appeals Board*, 893 A.2d 569 (D.C. 2006), the trial court stated that this doctrine provides that "money voluntarily paid under a claim of right to the payment . . . cannot be recovered by the payor solely because the claim was illegal." *Id.* at 582 (quoting *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1329 (Ill. App. Ct. 1995)). We conclude that dismissal was not proper on this basis: we question the trial court's reliance on this

doctrine, but in any event conclude that the trial court improperly considered this affirmative defense in considering whether appellant had failed to state a claim.

In *Eagle Maintenance Services*, we referred in passing to the voluntary payment doctrine as an "old common law doctrine rarely cited by courts in modern, complex transactions." *Id.* (quoting *Avianca, Inc. v. Corriea*, No. 85-CV-3277, 1992 WL 93128, at *6 (D.D.C. April 13, 1992)). But we limited our discussion of this common law rule and did not explain its operation, ultimately concluding that it (and several other common law doctrines) did not apply. To discern what we meant by the "voluntary payment doctrine," we look to the cases we cited in that opinion: *Avianca* and *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325 (Ill. App. 1995). Only *Avianca* provides a detailed explanation[5]:

> The doctrine might be best thought of as a corollary to the general rule about contracts without consideration: while such a contract is not enforceable, once completed it is generally irrevocable; one cannot take a "gift" back once given. The voluntary payment doctrine is thus a rule against welshing. . . . The doctrine is most commonly applied in situations where the terms of an

---

[5] The court in *Smith* briefly acknowledged that voluntary payment could function in some cases as a waiver of rights, but then held that any assertion of voluntary payment could not serve as the foundation for a determination that a plaintiff had failed to state a claim. 658 N.E.2d at 1329; *see infra* pages 18-20.

> initial contract have not been fulfilled by a seller/payee (for whatever reason) and a subsequent agreement, one that decreases the burden or increases the compensation to the seller/payee without consideration, replaces it . . . . Once the subsequent agreement has been performed, a payor cannot then sue on the initial contract to get his payments back; the payor is deemed to have waived its rights.

1992 WL 93128, at *6 (citations omitted).

Relatedly, the Restatement (Third) of Restitution & Unjust Enrichment has recognized that voluntary payment may potentially bar a claim to recoup payments that are made with full knowledge of the uncertainty as to the amount actually owed. *See* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 6 cmt. e (AM. LAW INST. 2011) The Restatement explains that it is "at least paradoxical to suppose that the overpayment of an asserted (or any payment of a non-existent) liability could ever be voluntary, and it is important to bear in mind that the proper operation of the voluntary payment rule must be realistic rather than artificial." *Id.* Accordingly, "judicial statements to the effect that 'money voluntarily paid with knowledge of the facts cannot be recovered back[]'. . . . must be treated with caution." A better articulation of the rule is: "[M]oney voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient* may not be recovered, on the ground of 'mistake,' merely because the payment is subsequently revealed to have exceeded

the true amount of the underlying obligation." *Id.*[6] The Restatement views this as nothing more than proper allocation of risk: "[One] form of risk allocation takes place when a payor assumes unilaterally the risk of uncertainty—electing to satisfy a demand, even without compromise as to amount, in the face of recognized uncertainty about the payor's underlying liability." *Id.* at § 6 cmt. d.

But we need not definitively resolve how the above-described principles apply in this case. Voluntary payment is an affirmative defense, *see Eagle Maint. Servs.*, 893 A.2d at 582, and a plaintiff's failure to anticipate and rebut affirmative defenses in her complaint is not a sufficient basis for a Rule 12 (b)(6) dismissal. *See Flying Food Grp., Inc. v. N.L.R.B.*, 471 F.3d 178, 183 (D.C. Cir. 2006); *see also* Super. Ct. R. Civ. P. 8 (a) (containing no requirement that a complaint anticipate and rebut affirmative defenses); 5 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1276 (3d ed. 2004) ("[A]llegations that

---

[6] The Restatement (Third) correspondingly advocates discarding the distinction between mistakes of law and mistakes of fact. RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 6 cmt. c ("[A] mistake as to liability concerns the existence of an obligation, contractual or otherwise; the extent of a valid obligation; or the existence of a defense to an obligation that is otherwise valid. Relief is available in all of these cases without regard to whether the mistake might be characterized as mutual or unilateral, a mistake of fact or a mistake of law."); *see also Time Warner Ent. Co. v. Whiteman*, 802 N.E.2d 886, 891 & n.6 (Ind. 2004).

seek to avoid or defeat a potential affirmative defense . . . are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading."). Rather, the application of this affirmative defense is "a question of fact, to be judged in light of all the circumstances surrounding a given transaction." *Shaw v. Marriott Intern., Inc.*, 474 F. Supp. 2d 141, 150-51 (D.D.C. 2007) (quoting *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 669 n.1 (7th Cir. 2001)) (concluding that "[w]hatever the merits of" the voluntary payment defense, appellant was "certainly correct that it raises factual issues that cannot be resolved in the context of a motion to dismiss").

To be sure, this court has acknowledged that a complaint may nonetheless be dismissed when affirmative defenses are "established on the face of the complaint." *Francis v. Rehman*, 110 A.3d 615, 621 (D.C. 2015) (quoting *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)). But nothing in the Amended Complaint supports a determination that appellant pled herself out of court in this case. She did not concede voluntary payment under the rule described above. Rather, appellant alleged in her Amended Complaint that appellees caused the late fee provision to be placed in the standard form lease, and that they "knew, or should have known, they had no right to collect these late fees"; that they represented this "illegal clause[] as being legal"; that they were the more

sophisticated parties in negotiating residential lease terms; and that appellants reasonably relied on their expertise. Nor did appellant concede voluntariness even in the colloquial sense; rather, she alleged facts suggesting that, in addition to being ignorant of the late fee's illegality, she was coerced into paying this fee.[7] Thus, the trial court should not have relied on the voluntary payment doctrine to justify dismissal of appellant's unjust enrichment claim.

In sum, we hold that the trial court erred by dismissing appellant's unjust enrichment claim. Whether appellant's late fee was, in fact, disproportionate to the landlord's reasonably anticipated damages and thus an improper penalty is a factual question that was not properly resolved at the motion to dismiss stage. Likewise the trial court's ruling on the affirmative defense of voluntary payment was possibly incorrect and at the very least premature. Thus, we vacate the dismissal of the unjust enrichment claim and remand to give appellant the opportunity to prove her claim.

---

[7] That appellant may have alleged these facts in anticipation of a voluntary-payment argument by appellees does not open the door to a ruling on this issue at the motion-to-dismiss stage. *See* 5 FED. PRAC. & PROC. CIV. § 1276 ("[I]f the plaintiff purports to negative an affirmative defense by way of anticipation but does not admit the effectiveness of the defense in his pleading, the [trial] court should treat the plaintiff's references to the defense as surplusage.").

For the foregoing reasons, the trial court's decision is affirmed in part and reversed and remanded in part.


*So ordered.*


EASTERLY, *Associate Judge*, concurring: I agree that Ms. Falconi-Sachs adequately pled a claim of unjust enrichment and that the trial court's 12 (b)(6) dismissal was thus in error. Moreover, I share the court's skepticism that the voluntary payment doctrine has any application to this case. Particularly in the landlord-tenant context, it seems inappropriate to endorse the legal fiction that a tenant "knowingly" waives her rights to challenge illegal fees or assumes the risk of paying illegal fees when she signs a standard form contract, drafted by a landlord, that contains unenforceable penalty provisions. Instead it seems advisable to follow the Restatement rule that "a person who renders performance under an agreement that cannot be enforced against the recipient . . . has a claim in restitution against the recipient as necessary to prevent unjust enrichment." *See* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 31 (1); *see, e.g.*, *Time Warner Ent. Co. v. Whiteman*, 802 N.E.2d 886, 893 (Ind. 2004) (following the Restatement (Third) and rejecting application of voluntary payment doctrine to bar plaintiffs' unjust enrichment challenge to unlawful late fee provision and

noting that it would be absurd to allow the commercial defendant "to take financial advantage of its own wrongdoing").[8]  I agree we need not definitively decide this question, but our forbearance should not be mistaken for agreement with the trial court's premature conclusion that voluntary payment barred Ms. Falconi-Sachs's unjust enrichment claim.

.

---

[8]  The trial court cited two cases to the contrary, *BMG Direct Marketing, Inc. v. Peake*, 178 S.W.3d 763 (Tex. 2005), and *Putnam v. Time Warner Cable of Se. Wisc., Ltd.*, 649 N.W.2d 626 (Wisc. 2002), but there is reason to question the analysis in these decisions.  In *BMG Direct Marketing*, the court purported to agree with the Restatement (Third) (it was reviewing a draft of the edition eventually published in 2011), but then endorsed an artificial awareness-of-risk rule of the exact sort the Restatement disapproved.  It opined that "when a person pays a late fee knowing its amount and the circumstances under which it would be imposed"—but not how it is calculated or whether it is legal—"that person pays in the face of a recognized uncertainty sufficient to satisfy the voluntary-payment rule's full-knowledge requirement."  178 S.W.3d at 774.  In *Putnam*, the court cited only to the RESTATEMENT (FIRST) OF RESTITUTION (AM. LAW INST. 1937) and grounded its conclusion that voluntary payment of late fees could bar a claim for restitution in a mistake-of-law analysis that the Restatement (Third) has since disapproved.  649 N.W.2d at 631-37.