*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-565

ALISON SIZER, ET AL., APPELLANTS

V.

FABIOLA K. LOPEZ VELASQUEZ, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2017 CA 007941 C)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued November 4, 2020    Decided February 24, 2022)[*]

*Scott Michelman* was on the briefs for the appellant.

*Vanessa Carpenter Lourie* was on the briefs for appellee.

Before EASTERLY, MCLEESE, AND DEAHL, *Associate Judges*.

EASTERLY, *Associate Judge*: After appellants Alison Sizer and Scott

Michelman, co-tenants, informed their landlords, appellees Fabiola K. Lopez

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant, by separate order, of the District of Columbia Office of the Tenant Advocate's Motion to Publish.

Velasquez and Jose A. Cuesta Leiva, that they were breaking their eighteen-month lease, they found replacement tenants willing to finish out the lease term. The replacement tenants were only willing to pay $3,100 a month, $200 less than Ms. Sizer's and Mr. Michelman's monthly rent, so Ms. Sizer and Mr. Michelman told their landlords that they would make up the difference in a lump sum payment. The landlords, who had advertised the property at $3,500 a month, rejected this option and asked the replacement tenants to pay the $3,300 a month in full. The replacement tenants backed out. Several months passed before the landlords found other replacement tenants. The landlords charged these replacement tenants $3,100 a month.

The landlords sued Ms. Sizer and Mr. Michelman for rent lost from the breach of the lease. In their answer to the landlords' complaint, Ms. Sizer and Mr. Michelman raised their landlord's failure to mitigate damages as a defense. In addition, Ms. Sizer and Mr. Michelman counterclaimed in relevant part that the landlords had, in violation of the Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904(e-1) (2021 Supp.), deceptively stated (1) in the October 2016 lease that Ms. Sizer and Mr. Michelman would be liable for attorneys' fees in the event of any litigation and (2) in a June 2017 "Early Lease Termination Agreement"

that the landlords had no duty to mitigate damages.[1] At a bench trial before a magistrate judge, the landlords prevailed on their damages claim. And Ms. Sizer's and Mr. Michelman's CPPA counterclaims were dismissed pretrial on the ground that the CPPA did not apply to landlord-tenant relations. *See Gomez v. Indep. Mgmt. of Del., Inc.*, 967 A.2d 1276, 1284–87 (D.C. 2009); *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 554–55 (D.C. 2016). On a motion for review of these rulings, pursuant to D.C. Code § 11-1732(k) (2021 Supp.), an Associate Judge of the Superior Court affirmed.[2]

On appeal to this court, Ms. Sizer and Mr. Michelman argue that the Associate Judge erred in rejecting their mitigation defense and that the CPPA, as amended in 2019, should apply and they should be permitted to seek relief thereunder.[3] For the reasons discussed below, we agree that the landlords failed to mitigate their damages, but we disagree that the 2019 CPPA may be applied retroactively to Ms.

---

[1] There is no question that these statements were false. Tenants may not be required in a lease provision to pay attorneys' fees in the event of litigation, *Pajic v. Foote Properties, LLC*, 72 A.3d 140, 144–146 (D.C. 2013); 14 D.C.M.R. § 304.4 (2014), and landlords are statutorily obligated to mitigate damages. D.C. Code § 42-3505.52 (2020 Repl.); *see also infra* Section I.

[2] Although the order states that the Associate Judge "denie[d] the motion for review," it is apparent that the Associate Judge conducted the review contemplated by D.C. Code § 11-1732(k) but denied relief.

[3] We review the Associate Judge's order, not the magistrate judge's decision. D.C. Code § 11-721(a)(1) (2012 Repl.).

Sizer's and Mr. Michelman's deceptive statement claims. Thus we reverse in part and affirm in part.

## I. Whether the landlords failed to mitigate damages

The duty to mitigate damages from a contractual breach is well established in the common law, see Restatement (Second) of Contracts § 350 (Am. Law Inst. 1981), and "bars recovery for losses suffered by a non-breaching party that could have been avoided by reasonable effort and without risk of substantial loss or injury." *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 586 (D.C. 2015) (internal quotation marks omitted). The objective is "to put the injured party in as good a position as full performance of the contract would have" with "the least necessary cost to the defendant." 11 Corbin on Contracts § 57.11 (2021). The injured party is "expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements." Restatement (Second) of Contracts § 350 cmt. b. This court has long recognized in other contractual scenarios that "the failure to mitigate damages is an affirmative defense and the tenant has the burden of showing the absence of reasonable efforts to mitigate." *Norris v. Green*, 656 A.2d 282, 287 (D.C. 1995). But in 2017, the Council of the District of Columbia clarified that the duty to mitigate applies to broken residential leases. D.C. Code § 42-3505.52 (2020 Repl.) ("If a tenant . . . vacates a

rental unit before the end of a lease term, any actual damages the housing provider may be entitled to shall be subject to the duty of the housing provider to mitigate actual damages for breach of the rental agreement.").

"Generally what is a reasonable effort to mitigate damages is a question of fact," *Havilah Real Prop. Servs., LLC v. VLK*, LLC, 108 A.3d 334, 343 n.8 (D.C. 2015) (brackets and internal quotation marks omitted), which we "review[] under a clearly erroneous standard." *Mingle v. Oak St. Apartments Ltd.*, 249 A.3d 413, 415 (D.C. 2021) (internal quotation marks omitted). Here, however, the issue does not turn on "the who, what, where, when, and how details of the case," *id.*, but rather which facts are permissibly considered in assessing whether the landlords fulfilled their duty to mitigate. This is a legal question that we review de novo. *See Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 89 (D.C. 1994) ("[d]eterminations of fact-free principles of law are designated questions of law" and are subject to de novo review); *cf. Greene v. District of Columbia*, 56 A.3d 1170, 1174 (D.C. 2012) (explaining "whether and under what circumstances" evidence of severance damages was admissible in a takings case was a question of law subject to de novo review).

The landlords in this case had a joint offer by the replacement tenants to pay $3,100 a month for the balance of the lease term and by Ms. Sizer and Mr. Michelman to pay a lump sum to make up the difference. The landlords were willing to move forward with the application, but they wanted the replacement tenants themselves to pay the full $3,300 a month in rent for the remainder of the lease term. By making this counteroffer, the landlords rejected the earlier joint offer that would have put them in exactly the same financial position they would have been had the contract never been breached. This was certainly their prerogative. But this decision does not constitute a reasonable effort to mitigate damages.

In reaching a contrary decision, the Associate Judge stated he "[did] not disagree with th[e] general proposition" that "the duty to mitigate requires a landlord to accept a replacement tenant for the remainder of the lease if the prospective new tenant is ready, willing, and able to assume all or part of the lease obligations and the breaching tenant is ready, willing, and able to make up any difference between the original and new lease." But the Associate Judge determined that "this case does not present the issue because the [magistrate judge] reasonably found that the prospective substitute tenants . . . decided to back out of the transaction." This analysis is flawed. The fact that the replacement tenants walked away after the landlords rejected the tenants' joint offer with Ms. Sizer and Mr. Michelman to pay

the amount of rent the landlords would have received absent a breach has no legal bearing on whether the landlords reasonably rejected this joint offer beforehand.

As for the reasonableness of the landlords' decision to reject the joint offer to pay the amount of rent the landlords would have received absent a breach, the Associate Judge endorsed the magistrate judge's determination that this decision was supported by a legitimate "business justification." The magistrate judge in turn concluded that the landlords could reasonably demand that the new tenants (1) sign a lease longer than the remaining lease term and (2) pay the full amount of rent without assistance in order to be able to charge a higher rent after Ms. Sizer's and Mr. Michelman's lease expired. But the landlords did not reject the joint offer because the proposed lease term was too short. And the terms of their lease with Ms. Sizer and Mr. Michelman gave landlords no guarantee of a subsequent lease at a higher amount. Thus, assuming that requiring the replacement tenants to pay the $3,300 in full would have protected the landlords' future opportunity to receive a higher rent after the expiration of the Sizer-Michelman lease, protection of that future opportunity would not have made the landlords whole; it would have put the landlords in a superior position. Pursuit of an opportunity to profit from a breach is not a reasonable basis to reject an opportunity to mitigate damages. *See Bolton*, 110

A.3d at 586 (explaining that a breaching party bears the burden to show that the nonbreaching party could have avoided loss).

Because Ms. Sizer and Mr. Michelman proved that the landlords had the opportunity to receive the same amount of money over the same amount of time as they would have if Ms. Sizer and Mr. Michelman had not breached their lease, the Associate Judge should have ruled that the landlords failed to mitigate damages.

## II.    Whether the tenants have viable claims under the CPPA as recently amended

Ms. Sizer and Mr. Michelman included in their answer to their landlords' amended complaint two counterclaims for deceptive statements under the CPPA. The magistrate judge dismissed these claims prior to trial based on Ms. Sizer's and Mr. Michelman's concession that the CPPA did not apply to landlord-tenant relations. In its review of this ruling, the Associate Judge noted that Ms. Sizer and Mr. Michelman had "acknowledge[d] that this ruling was correct under *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 554-55 (D.C. 2016)"[4] but "want[ed] to preserve the ability to ask the Court of Appeals to overrule *Falconi-*

---

[4] *Id.* at 554 (concluding that *Gomez*, 967 A.2d at 1286, held that there is no private right of action under the CPPA in connection with landlord-tenant relations).

*Sachs*." Because the Associate Judge was "bound by *Falconi-Sachs*' interpretation of the CPPA," he affirmed the dismissal of the CPPA claims.

On appeal, Ms. Sizer and Mr. Michelman assert that *Falconi-Sachs* was effectively overruled by the Council when it amended the CPPA in 2019 and added a private right of action to combat deceptive trade practices in landlord-tenant relations, D.C. Code § 28-3905(k)(6) (2021 Supp.). This provision, they argue, retroactively applies to their claims, pursuant to the Supreme Court's analysis in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994) (holding that a remedial statute that is not expressly retroactive may, nevertheless, have an impermissibly retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"). Conceding that the CPPA as amended in 2019 is silent as to its prior application, Ms. Sizer and Mr. Michelman argue that its application to their claims under the statute "raises no retroactivity problem" under *Landgraf* because, when the landlords made their deceptive statements in 2016 and 2017, "the CPPA already forbade that conduct, and it already authorized the . . . Attorney General . . . to sue and obtain for tenants the same remedies authorized under the private right of action Tenants invoke here" (italics omitted). Because timing matters, we separately consider whether the CPPA as amended in 2019 may be

applied to each of Ms. Sizer's and Mr. Michelman's claims of false and deceptive statements.

To start, we disagree that the Attorney General could have sued the landlords under the CPPA for deceptive statements when they represented in the October 2016 lease that Ms. Sizer and Mr. Michelman would be responsible for attorneys' fees in the event of litigation related to their tenancy. This provision was unquestionably illegal, *see supra* note 1, but there is a difference between barring landlords from including such a provision and making landlords liable for deceptive statements. This liability did not arise for landlords until the CPPA was amended by emergency legislation in December 2016, D.C. Act 21-576, which expressly authorized the Attorney General to apply to landlord-tenant relations "the provisions and exercise the duties of this section"—including D.C. Code § 28-3904 (e-1), which makes it a violation for "any person to engage in . . . [a] deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to . . . [r]epresent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."[5]

---

[5] Ms. Sizer and Mr. Michelman argue that the Council's observation in its 2018 Committee Report that Attorney General was already bringing enforcement actions against landlords under the CPPA supports their argument that the Attorney General could have sued the landlords for their 2016 deceptive statement. But how

As for the landlords' 2017 false representation that they did not have a duty to mitigate if tenants refused to pay a lease-break fee, *see supra* Section I, Ms. Sizer and Mr. Michelman are correct that the landlords could have been sued by the Attorney General for this deceptive statement. By that point, the D.C. Council had already enacted emergency and temporary legislation authorizing the Attorney General to do so, *see supra* note 5. But the fact that the Attorney General could have sued the landlords does not necessarily mean Ms. Sizer and Mr. Michelman were authorized under *Landgraf* and its progeny to bring suit for damages under the 2019 amendments.[6]

In addition to considering whether a new statute would "impair rights a party possessed when he acted" under *Landgraf*, we must also consider whether a new statute would "increase a party's liability for past conduct." 511 U.S. at 282–83. In

---

the Attorney General acts is not supporting authority for what the law allows. In any event, it is unremarkable that the Attorney General commenced enforcement actions against landlords under the CPPA prior to 2019. The Attorney General was authorized to do so by a series of overlapping emergency and temporary legislation starting in December 2016 and continuing until the passage of the permanent legislation in 2019. *See* Act 21-0576, Act 21-0646, Act 22-0164, Act 22-0191, Act 22-0402, Act 22-0446, Act 22-0505.

[6] To the extent Ms. Sizer and Mr. Michelman argue that *Falconi-Sachs* and *Gomez* were wrongly decided—and in fact that a private right of action to challenge deceptive practices by landlords has existed since 2000—we are bound by precedent and have no authority to revisit these decisions. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).

*Landgraf*, the Supreme Court held that a "new compensatory damages" provision under the Civil Rights Act would be impermissibly retroactive if it applied to conduct taken before the statute's enactment. *Id.* at 282. The court reasoned that this provision "affect[ed] the liabilities of defendants . . . by requiring particular employers to pay for harms they caused" and was the "type of legal change that would have an impact on private parties' planning." *Id.* at 282.

In *Landgraf*, the new statute made compensatory damages available where only equitable remedies and backpay had previously been allowed. *Id.* at 252. In this case, the amendment to the CPPA allowing a private right of action also changed the financial consequences for landlords. Whereas landlords faced with a lawsuit by the Attorney General may be required to pay "economic damages" and limited financial penalties (not more than $5,000 for each initial violation of enumerated sections; not more than $10,000 for subsequent violations, D.C. Code § 28-3909(b)(1)–(2) (2021 Supp.)), a landlord sued by private action may be required to pay each tenant $1,500 per violation or treble damages, whichever is greater; punitive damages; and "[a]ny other relief which the court determines proper." D.C. Code § 28-3905(k)(2)(A)(I)–(II) (2021 Supp.). In the absence of any argument by Ms. Sizer and Mr. Michelman addressing how the increased liabilities under the 2019 Amendment to the CPPA would survive a retroactivity analysis under

*Landgraf*, we conclude that application of the statute as amended to the landlords' 2017 conduct would be impermissibly retroactive.[7]

### III. Conclusion

For the reasons stated above, we remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

[7] Subsequent to *Landgraf,* the Supreme Court in *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 951 (1997), held that application of statutory amendment that expands the class of potential plaintiffs to conduct that occurred before the statute was amended is impermissibly retroactive. *Id.* at 950 ("In permitting actions by an expanded universe of plaintiffs with different incentives, [the amendment] essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued."). No party cited *Hughes* to us and this court has yet to examine it, but it appears that *Hughes* could also support our retroactivity analysis.